```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT

SOPHIA BOYAGES,                )
                               )
        Plaintiff,             )
                               )
        v.                     )    Case No. 2:24-cv-538
                               )
THE UNIVERSITY OF VERMONT AND  )
STATE AGRICULTURAL COLLEGE,    )
                               )
        Defendant.             )
```

**OPINION AND ORDER**

Plaintiff Sophia Boyages brings this action against the University of Vermont and State Agricultural College ("UVM") claiming copyright infringement. Pending before the Court is Plaintiff's motion to compel responses to four document requests and one interrogatory. For the reasons set forth below, the motion to compel is granted in part and denied in part.

**Background**

Plaintiff is a former administrative assistant to the Director of Athletics at UVM. She is also an artist with special skills in graphic design. Because of her design skills and experience, Plaintiff was invited to attend meetings with the Athletic Department's branding working group. The Amended Complaint alleges that, on her own time and with her own resources, Plaintiff designed a logo depicting the front-facing head of a mountain lion or catamount, which is the UVM mascot.

She entitled the work SophCat Design.  On January 31, 2023, she presented the SophCat design to the members and directors of the Athletic Department as a potential idea for a secondary UVM logo.  She allegedly created the design with the hope of being promoted within the Athletic Department or receiving credit and compensation for her design work.

The Amended Complaint claims that without Plaintiff's consent or authorization, UVM copied, reproduced, displayed, and published the SophCat design in various ways, including: a press release stating that the design is the University's secondary logo; an application for Federal Trademark protection with the United States Patent and Trademark Office; placing the design on clothing, sporting equipment, and memorabilia; and using the design as wall signage in the University's facilities.  The Amended Complaint also claims that Plaintiff owns a valid copyright for the SophCat design and that UVM infringed on her exclusive rights.

Now before the Court is Plaintiff's motion to compel a series of discovery responses.  The motion first seeks production of metadata underlying certain documents.  The motion further asks the Court to compel production of relevant communications, including those stored on various UVM employees' private phones.  Finally, Plaintiff moves to compel UVM's response to an interrogatory asking about the University's

2

policies and practices with respect to rebranding. UVM argues that is has already provided extensive discovery, that the parties never agreed to provide metadata, and that the information being sought is neither particularly relevant nor proportional to the needs of the case.

## Discussion

Federal district courts have broad discretion in deciding motions to compel. *See Grand Central Partnership, Inc. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999). The scope of discovery is generally limited to any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"Parties are entitled to discovery of documents in the 'possession, custody or control' of other parties, ... so long as they are 'relevant to any party's claim or defense.'" *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 102 (S.D.N.Y. 2013) (quoting Fed. R. Civ. P. 26(b)(1)). Once the party seeking discovery has demonstrated relevance, the party resisting discovery "has the burden of showing

3

specifically how, despite the broad and liberal construction afforded the federal discovery rules," the discovery sought is "overly broad, burdensome or oppressive." *Id.* (citation omitted).

I. **Document Request 1 (Metadata)**

Plaintiff's first document request asks for "[a] copy of each draft or version of the Sophcat Design, including, but not limited to, all works that are substantially similar, derived from, or based on the Sophcat Design." UVM has produced the photoshop (PSD) file that UVM employee Pete Estes received from Plaintiff. UVM did not provide the metadata of the file. Plaintiff seeks disclosure of the metadata in part to reveal the date and time that Estes received the file, asserting that such information is retained only by the file recipient.

Plaintiff also requests the original file of Kate Youlen's derivative version of the SophCat design. UVM's opposition memorandum submits that none of Kate Youlen's work was included in the final image, and that her version is therefore irrelevant. Plaintiff's reply memorandum does not respond to that argument. The Court therefore sustains UVM's relevance objection and will not compel production of Youlen's original file.

With respect to the Estes file, the underlying metadata consists of imbedded information that describes the document's

history.  *See Aguilar v. Immigration and Customs Enforcement Div.*, 255 F.R.D. 350, 353-55 (S.D.N.Y. 2008) (describing the nature of metadata).  Plaintiff submits that the PSD file downloaded onto Estes' computer would contain metadata that includes drafts or derivatives of the SophCat design.  If the metadata does, in fact, contain such information, those drafts are plainly relevant to Plaintiff's claims with respect to authorship.

For support of their relative positions on metadata production, both parties cite *Aguilar*, in which the district court provided a thorough discussion of recent legal developments on that issue.  *Id.* at 355-59.  While *Aguilar* reflected some resistance to compelling production of metadata, many of the factual complexities in that case, including production of spreadsheets and databases, are not present here.  *See id.* at 359-63.

Plaintiff's reply memorandum suggests that the requested metadata could be produced, at least in part, simply by means of either "a screenshot of the date and time the PSD file was received in Pete Estes' downloads folder or [by] provid[ing] Plaintiff with the exact time date and time of when the PSD file was received."  ECF No. 27 at 1.  Although UVM argues that such production is unnecessary since the relevant timelines are not disputed, Plaintiff contends that the date and time in question

5

is nonetheless significant. As the burden of such production will be minimal, the Court grants Plaintiff's motion to compel that limited information.

As to other metadata production, *Aguilar* noted that when, as in this case, the parties did not come to an agreement about metadata data in their initial discovery stipulations, "courts tend to deny later requests, often concluding that the metadata is not relevant." *Id.* at 357. If the ultimate determinant is relevance, however, Plaintiff's desire for all derivative versions of the design appears justified on its face. Furthermore, *Aguilar* noted a recent consensus that metadata

> production should be made in the form or forms in which the information is ordinarily maintained or in a reasonably usable form, taking into account the need to produce reasonably accessible metadata that will enable the receiving party to have the same ability to access, search, and display the information as the producing party where appropriate or necessary in light of the nature of the information and the needs of the case.

*Id.* at 356 (quoting *The Sedona Principles: Best Practices Recommendations and Principles for Addressing Electronic Document Production Principle 12* (2d ed.)). In keeping with that principle, and given the relevance of the requested information, Plaintiff is entitled to access the data file delivered to Estes such that she has "the same ability to access, search, and display the information as the producing

party."  Plaintiff's motion to compel further discovery in response her first discovery request is therefore granted.

**II.  Document Requests 9-11**

Plaintiff next moves to compel additional responses to Document Requests 9, 10, and 11.  Request 9 seeks "[a]ll documents between members of the Branding Working Group" and other members of that group, as well as documents exchanged with "others, including UVM employees and persons external to UVM" relating to or concerning the refreshing of UVM logos, creation of the SophCat Design, and "a secondary logo and front facing catamount design for the Athletic Department."  Request 10 seeks "all documents between" Krista Balogh and Plaintiff relating to the SophCat Design and a secondary logo.  Request 11 seeks communications between Balogh and members of the Branding Working Group regarding the same issues covered in the previous two requests.

The parties' disputes focus on two issues: (1) messages on private phones and devices owned by members of the Branding Working Group, and (2) when members of the working group were invited to be a part of that group.  With respect to access to private devices, Estes and Balogh reportedly volunteered to produce relevant information from their devices, and those communications have been produced.  UVM contends that those two individuals – Balogh as the head of the working group and Estes

7

as a person who contributed to changes to the catamount logo at issue – are the key employees involved. UVM has not asked others in the Branding Working Group to produce any communications. Plaintiff argues that UVM has the "practical ability" to access information from other members of the group and should be compelled to do so.

Under Rule 34 of the Federal Rules of Civil Procedure, a responding party is required to produce requested documents that are within the "responding party's possession, custody, or control." Fed. R. Civ. P. 34(a).

> Control, as that word is used in Rule 34, "does not require that the party have legal ownership or actual physical possession of the documents [and other tangible objects] at issue; rather, documents [and other tangible objects] are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents [and other tangible objects] from a non-party to the action.

*Shim-Larkin v. City of New York*, No. 16-cv-6099 (AJN/KNF), 2019 WL 5198792, at *10 (S.D.N.Y. Sept. 16, 2019) (alterations in original) (quoting *The Bank of N.Y. v. Meridien Biao Bank Tanzania Ltd.*, 171 F.R.D. 135, 146 (S.D.N.Y. 1997)). "Courts have repeatedly found that employers have control over their employees and can be required to produce documents [and other tangible objects] in their employees' possession." *Shim-Larkin*, 2019 WL 5198792, at *10. Furthermore, "[i]t is well established that text messages 'fit comfortably within the scope of

8

materials that a party may request under Rule 34.'"  *Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 234 (D. Minn. 2019) (quoting *Flagg v. City of Detroit*, 252 F.R.D. 346, 352–53 (E.D. Mich. 2008)).

Consistent with this case law, the Court finds that Plaintiff may ask UVM for relevant communications on its employees' devices.  Although Plaintiff initially requested communications among the Branding Working Group and other individuals both within and outside of UVM, her briefing appears to narrow the request to just members of the working group. *See, e.g.*, ECF No. 27 at 2 ("Plaintiff's request for the text messages of the members of the branding working group is not a fishing expedition.").  So narrowed, the Court finds that the request is not disproportionate to the needs of the case.  The Court also finds that such communications are relevant to the extent they pertain either to development of the catamount image in question, and/or to Plaintiff's contributions to the development of a secondary logo.  UVM shall therefore ask other members of the working group to search their devices, including cell phones, for those relevant communications, and any such communications shall be produced.

Plaintiff also requests information about when members of the working group were invited to participate in the group.  She claims that such information is relevant because, among other

things, it places her own invitation in context.  UVM has reportedly revealed when two of the eight members received their invitations, and communicated that it has no further information.  Plaintiff alleges that Microsoft Outlook stores such information in Teams.  To the extent this limited information exists or is reasonably recoverable, its shall be produced.

### III. Interrogatory 8

The final dispute pertains to Plaintiff's Interrogatory 8, which asks UVM to "[d[escribe in detail UVM's policies, procedures, practices, and implementation around rebranding concerning logo creation and development and brand refreshing." UVM responded that it does not have any such policies, procedures, or practices.  Plaintiff disputes that assertion, noting that the new logo had to be approved by various UVM officials.  UVM attributes the lack of policy to the fact that re-branding happens infrequently and is not a part of regular University operations.

The Court cannot compel information that does not exist. While perhaps there is no formal policy with respect to "logo creation and development and brand creation," there may be accepted practices for finalizing marketing or other UVM materials prior to their publication.  Plaintiff's counsel can pursue the desired information in the course of future discovery

10

efforts, including depositions. Because there is no formal policy responsive to Plaintiff's current request, however, the motion to compel a supplemental response to Interrogatory 8 is denied.

## Conclusion

For the reasons set forth above, Plaintiff's motion to compel (ECF No. 25) is granted in part and denied in part. The parties shall bear their own fees and costs with respect to the motion.

DATED at Burlington, in the District of Vermont, this 27th day of January, 2025.

/s/ William K. Sessions III
Hon. William K. Sessions III
U.S. District Court Judge